IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA,
ex rel. HENRY ROOP,

vs.  No. 1:04 CV 87-M-D

ARKRAY USA, INC. f/k/a HYPOGUARD USA, INC. and
MEDISYS GROUP, PLC,  Defendant

### ORDER

This cause comes before the court on the motion of defendant Arkray USA, Inc. f/k/a Hypoguard, USA, Inc. ("Hypoguard") to transfer this case to the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. § 1404(a). The court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

Plaintiff Henry Roop filed this action as a relator on behalf of the United States under the False Claims Act, 31 U.S.C. § 3729-32 against his former employer, defendant Hypoguard. Hypoguard is a Minnesota company which sells blood glucose monitors, primarily to distributors, nursing homes and long-term care facilities. Plaintiff, a resident of Tupelo, worked as a salesman for Hypoguard for about nine months from late 2003 to early 2004. Plaintiff alleges that Hypoguard has known since at least 2003 that its blood glucose monitors were defective, inasmuch as they allegedly register blood glucose levels substantially lower than the true levels when an insufficient amount of blood is applied to the blood test strip.

In his complaint, plaintiff attempts to tie this alleged defect into a *qui tam* action on behalf of the United States in at least two ways. First, plaintiff contends that

defendant failed to meet its obligations under applicable Food and Drug Administration ("FDA") regulations to timely file medical device reports notifying the FDA of the aforementioned defect in its blood glucose monitors. Second, plaintiff contends that defendant either presented, or caused to be presented, false claims for payment to Medicare and Medicaid for services rendered by its allegedly defective product. Based upon these and other allegations, plaintiff filed the present action in this court on March 15, 2004. Subsequently, the FDA terminated an investigation of Hypoguard arising out of plaintiff's allegations, and the United States thereafter declined to intervene in this lawsuit. The court now has before it a 28 U.S.C. § 1404(a) motion to transfer filed by Hypoguard, seeking the transfer of this action to the U.S. District Court for the District of Minnesota.

28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The parties do not dispute that this action might have been originally brought in Minnesota, and the court must therefore determine whether defendant has met its burden of proving that the "convenience of parties and witnesses" requires transfer. The Fifth Circuit Court of Appeals has held that a determination of "convenience" turns on a number of public and private interest factors. *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir.1986). The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the

administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.*

Prior to analyzing the public and private venue factors, the court would initially note that, as a general matter, it should give deference to a plaintiff's choice of forum, especially when it is in the district where the plaintiff resides. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Defendant notes, however, that in a *qui tam* action such as the present one, the United States, not plaintiff, is the real plaintiff in interest. *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 756 n. 10 (5th Cir. 2001). Accordingly, federal district courts throughout the nation have held that, in *qui tam* actions, the plaintiff's choice of venue is not entitled to the same level of deference as in other actions. *See. e.g U.S. ex rel. Adrian v. Regents of University of California*, 2002 WL 334915 (N.D.Cal. 2002)("a plaintiff's choice of forum is not given substantial weight when the plaintiff is a *qui tam* relator, asserting the rights of the United States government."); *United States ex rel. LaValley v. First Nat'l Bank of Boston*, 625 F.Supp. 591, 594 (D.N.H.1985)(plaintiffs' choice of forum "should be given relatively little weight" in a *qui tam* action); *U.S., ex rel. Penizotto v. Bates East Corp.*,1996 WL 417172 (E.D.Pa. 1996) (same).[1]

While the aforementioned district court decisions cited by defendant are merely persuasive authority, plaintiffs have failed to offer a single decision holding to the

---

[1]Defendant notes that, in two of the three cases which it cites, the United States declined to intervene in the lawsuit, just as it has declined to intervene here.

3

contrary, and this court's research has revealed no countervailing authority on this point. Indeed, this court's research actually revealed additional authority supporting defendant's position. *See, e.g. U.S. ex rel. Haight v. Catholic Healthcare West*, 2001 WL 1463792 (N.D. Cal. 2001)(holding that the fact that "the United States, rather than relators, is the real party in interest ... lessen[ed] the deference traditionally accorded the plaintiffs' choice of forum."); *U.S. ex rel. Swan v. Covenant Care, Inc.*, 1999 WL 760610 (N.D. Cal. 1999)(holding that "plaintiffs here are also suing in the name of another, the United States" and that "thus, plaintiff's choice of forum is entitled to little consideration."). In light of the weight and consistency of the aforementioned authority, it seems to be the consensus view among district courts that a plaintiff's choice of forum is entitled to considerably less deference in *qui tam* cases. This court agrees, and having so concluded, the court will now address the specific factors established by the Fifth Circuit to determine if transfer is appropriate.

**A. Private Factors Regarding Transfer**

As noted previously, the factors to be considered in ruling upon a 1404(a) motion to transfer include the following private factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Syndicate 420 at Lloyd's London*, 796 F.2d at 831. The court will consider these factors in turn.

**(1) the relative ease of access to sources of proof.**

In the court's view, this factor supports the requested transfer to the District of Minnesota. The complaint in this case centers around allegations 1) that there exists a

defect in the blood glucose monitors manufactured by defendant; 2) that defendant failed to timely communicate information regarding this defect to the FDA; and 3) that defendant either made or caused to be made false Medicare and Medicaid claims, based upon services performed by its allegedly defective monitors. In the court's view, access to sources of proof regarding each of these three allegations is clearly superior in the District of Minnesota than in the Northern District of Mississippi. Hypoguard has submitted an affidavit from its Human Resources Director Brian Holsten in which Holsten asserts that Hypoguard's submissions to the FDA were prepared in Minnesota and that originals of copies of these submissions are kept at its Minnesota headquarters. Holsten further asserts that Hypoguard conducts tests in its Minnesota facilities of monitors which are returned by customers as being defective and that documentation regarding such tests are kept in Minnesota.

This court agrees with Hypoguard that access to sources of proof regarding plaintiffs' allegations is far superior in the District of Minnesota than in this district. Plaintiff appears to concede that relevant documentation is located in Minnesota, but he argues that such documentation can easily be transported to Mississippi for trial. While this may well be the case, it is this court's experience that, as a practical matter, the introduction of documentary evidence often leads to the necessity of calling live witnesses for various purposes, including authentication and to provide explanation and/or context for information contained in the documents. At this early stage in the proceedings, it is impossible to determine to what extent such testimony might be required, but it is clear to this court that the U.S. District Court for the District of Minnesota would have much easier access to any such sources of proof than this court.

This court therefore concludes that this factor supports transfer.

**(2) the availability of compulsory process to secure the attendance of witnesses;**

Neither party discusses this factor in their brief, and the court will therefore assume that it is a neutral one.

**(3) the cost of attendance for willing witnesses;**

In the court's view, this factor supports transfer to the District of Minnesota. At this stage of the proceedings, it is largely a matter of speculation to determine which witnesses will be required to testify at any eventual trial. Nevertheless, it is abundantly clear from plaintiff's complaint that much, if not most, of the alleged wrongdoing by defendant occurred, if at all, in the District of Minnesota. It therefore seems highly likely that many of the witnesses to such alleged wrongdoing would similarly be located in Minnesota. Indeed, defendant submits that several key employees would very likely be required to testify in this regard, and these employees are specifically listed in Holsten's affidavit.

Plaintiff argues that the fact that many of these Minnesota witnesses are employees of defendant, a corporation with considerable resources, should be taken into consideration in deciding whether transfer is appropriate. While plaintiff only submits Ninth Circuit authority in support of this proposition, and defendant asserts that there exists no Fifth Circuit authority so holding, the court will assume that this factor is properly given some weight. Even having done so, however, the court nevertheless

concludes that the center of gravity of the events in this case is so heavily in favor of Minnesota that this factor still weighs in favor of defendant. Indeed, defendant notes that not all Minnesota witnesses are its employees, and Holsten specifically identifies Joseph Edwin, an FDA investigator from Minneapolis, as one such non-employee potential witness.

Plaintiff argues that requiring him to travel to a state far removed from his home to litigate this matter will serve to discourage *qui tam* actions, but, as noted previously, federal district courts have routinely granted defendants' motions to transfer *qui tam* actions similar to the present one. Plaintiff's protestations are particularly inappropriate in this case, given that, according to his own submissions, he is aware that the litigation of this case will likely require the subpoenaing of witnesses from across the nation. That is, plaintiff has submitted a witness list from what he represents to be a similar lawsuit now pending in Illinois. *See Miller v. Hypoguard*, No. 05-186 (S.D. Ill). If this court is to assume that the witness list in *Miller* is representative of the one which will be produced in this case, then it is clear that, by electing to litigate this matter, plaintiff has undertaken to file a truly massive lawsuit involving witnesses from across the nation.

In his brief, plaintiff submits that his testimony will be required, along with that of James Bennett, a Corinth pharmacist who allegedly brought the defects in the Hypoguard monitor to his attention. Plaintiff further submits that he may call to testify "consumers from states neighboring Mississippi such as Alabama Healthcare." This court will accept that some testimony will be required from plaintiff and certain other local witnesses regarding how they became aware of the nature of the alleged defects in this case. At the same time, this is most assuredly not a products liability claim brought

by a Mississippi plaintiff regarding a defect which manifested itself only in this state or in this region. To the contrary, this is a *qui tam* action in which the United States is the real party in interest, and the complaint alleges a nationwide scheme by defendant to defraud Medicare and Medicaid, and, by extension, U.S. taxpayers.

It seems clear that much, if not most, of the proof in this case will involve the nature of disclosures and communications made by Hypoguard in Minnesota to the FDA in Washington DC, as well as Medicaid and Medicare billings made nationwide. While the complaint alleges that the effect of the decisions made by Hypoguard were felt nationwide, it seems clear that these effects occurred as the result of decisions and actions which were made in Minnesota. The witness list produced in *Miller* supports the court's conclusion in this regard. That is, the *Miller* witness list (which plaintiff represents as being similar to the present one) contains a large number of Hypoguard employees in Minnesota,[2] and, to the extent that it involves non-Minnesota witnesses, these witnesses are scattered throughout the nation. Plaintiff himself references this fact in his brief, wherein he notes that "non-employee witnesses and/or sources of proof" in *Miller* are located in Arizona, New Jersey, Ohio, Georgia, Tennessee, Florida, Maine, Indiana, Texas, Illinois, Pennsylvania, California, Missouri, Mississippi, Minnesota and Maryland. Plaintiff apparently views this fact as militating against transfer, but the court

---

[2]For example, Holsten asserts in his affidavit as follows:
> I have reviewed the discovery disclosures filed by plaintiff's counsel in a class action pending in Madison County, Illinois. Based on that review, I am aware that plaintiff's counsel believes that at least 48 current or former Hypoguard employees have knowledge relating to plaintiff's allegations. To the best of my knowledge, 19 of those persons presently reside in Minnesota.

8

does not agree.

In the court's view, plaintiff clearly realizes that he is engaged in a nationwide litigation, and, judging from his brief, it seems clear that any role played by Mississippi witnesses in the trial in this case will likely be a relatively minor one. While the potential witnesses in this case are apparently located throughout the nation, it seems clear that the number of witnesses residing in Minnesota will greatly outnumber the number of witnesses residing in any other state. Thus, even considering the fact that most of these potential Minnesota witnesses are employees of a corporate defendant with substantial resources, the court nevertheless concludes that the "cost of attendance for willing witnesses" factor supports the transfer sought by defendant.

**(4) all other practical problems that make trial of a case easy, expeditious and inexpensive.**

The parties give little attention to this factor, and the court concludes that the practical problems which generally arise in a trial will be addressed in a much more expeditious fashion by a Minnesota District Court, for essentially the reasons noted previously. The court therefore concludes that this factor supports the requested transfer.

**Public Factors Regarding Transfer**

As discussed previously, the relevant public factor relating to transfer include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the

9

law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.* In the court's view, the last two factors are neutral factors in this case, given that this case will be decided based upon federal law which presents no familiarity or conflict issues. The court will therefore limit its discussion to the first two factors.

**(1) the administrative difficulties flowing from court congestion;**

Defendant has produced data indicating that the Northern District of Mississippi has a more congested docket than the District of Minnesota, and plaintiff has failed to rebut this data in his own brief. While the court does not view this as being a major factor in support of either party's position, the court does agree that it militates somewhat in favor of the requested transfer.

**(2) the local interest in having localized controversies decided at home;**

The court does not view this as being a significant factor in favor of either party, and plaintiff does not contend otherwise. While it appears that this case involves national rather than local issues, this fact certainly does nothing to change this court's previously stated view that transfer is appropriate.

**Conclusion**

In light of the foregoing, it is apparent that relevant private and public factors support the transfer sought by defendant. It is therefore ordered that defendant's motion to transfer venue [25-1] is granted, and this case is hereby transferred to the District of Minnesota.

SO ORDERED, this the 19th day of March, 2007.

                                              **/s/ Michael P. Mills**
                                              **UNITED STATES DISTRICT JUDGE**